NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

LORI KRENZEN, *Petitioner/Appellant*,

*v.*

ADAM KATZ, *Respondent/Appellee*.

No. 1 CA-CV 17-0367 FC
FILED 7-17-2018

Appeal from the Superior Court in Maricopa County
No. FC2012-091110
The Honorable James D. Smith, Judge

**AFFIRMED IN PART; REMANDED**

COUNSEL

Franks Law Office PC, Phoenix
By Todd Franks
*Counsel for Petitioner/Appellant*

Berkshire Law Office PLLC, Tempe
By Keith Berkshire, Erica Gadberry
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge James P. Beene joined.

---

**C A M P B E L L**, Judge:

¶1        Lori Krenzen ("Wife") appeals the family court's post-decree qualified domestic relations order ("QDRO") and the denial of her request for attorney fees. For the following reasons, we affirm the QDRO and remand the issue of attorney fees for the family court to consider the parties' financial resources.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Wife and Adam Katz ("Husband") were married in 2007. Wife served Husband with a petition for dissolution of marriage in September 2012, and the parties were divorced in November 2013. As relevant here, the decree provided that "Father's Marker Advisors 401k shall be divided so that *all funds contributed during the marriage* (and all proceeds of such funds) are divided 50/50." (Emphasis added.)

¶3        Later, Husband proposed a QDRO assigning Wife 50 percent of the funds contributed in the Marker Advisors 401(k) (the "401(k)") through September 2012. Wife objected and argued she was entitled to 50 percent of the 401(k) contributions through November 2013, the date the court signed the decree. The family court rejected Wife's argument, concluding that the phrase "during the marriage" (i) was ambiguous and (ii) meant "until the marital community terminated" upon service of the petition, consistent with Arizona law, *see* Ariz. Rev. Stat. ("A.R.S.") § 25-211, and the parties' positions at trial. Each side requested an award of attorney fees, arguing that the other had been unreasonable. The court opined that both parties acted unreasonably and advised the parties "[i]f subsequent evidence reveals the same lack of communication between the parties regarding exchanging proposed QDROs at this stage, then the Court likely will award fees and costs to the more cooperative and responsive

party."[1] *See* A.R.S. § 25-324(A). Following entry of the QDRO, Wife timely appealed.

## DISCUSSION

### A. The 401(k)

**¶4** A divorce decree is a judgment. *See* Ariz. R. Civ. P. 54(a) (defining "judgment" to include "a decree and an order from which an appeal lies"); *Craig v. Craig*, 227 Ariz. 105, 106, ¶ 6 (2011) (noting a dissolution decree is a final, appealable judgment). "The legal operation and effect of a judgment must be ascertained by a construction and interpretation of its terms." *Paxton v. McDonald*, 72 Ariz. 378, 382 (1951) (citation omitted). We review de novo the interpretation of a decree, applying the general rules of construction for any written instrument. *Cohen v. Frey*, 215 Ariz. 62, 66, ¶¶ 10-11 (App. 2007). We review de novo the characterization of property as separate or community. *Schickner v. Schickner*, 237 Ariz. 194, 199, ¶ 22 (App. 2015). Because a judgment "exists as an independent resolution by the court of the issues before it," the parole evidence rule does not apply. *In re Marriage of Zale*, 193 Ariz. 246, 249-50, ¶¶ 10-15 (1999).

**¶5** Our first inquiry is whether the decree is ambiguous. *Cohen,* 215 Ariz. at 66, ¶ 11. "The meaning of a decree is to be determined from the language used." *Id.* (quoting *Stine v. Stine,* 179 Ariz. 385, 388 (App. 1994)). A decree is ambiguous if it "can reasonably be construed to have more than one meaning." *In re Marriage of Johnson & Gravino,* 231 Ariz. 228, 233, ¶ 16 (App. 2012) (quoting *In re Estate of Lamparella*, 210 Ariz. 246, 250, ¶ 21 (App. 2005)). We construe the language used in accordance with its natural and legal import and with reference to related provisions. *Cohen,* 215 Ariz. at 66, ¶¶ 10-11; *In re Marriage of Johnson & Gravino,* 231 Ariz. at 233, ¶ 17 (quoting *Lopez v. Lopez,* 125 Ariz. 309, 310 (App. 1980)).

**¶6** The family court determined that the language of the decree is ambiguous. Whether or not we agree with that determination, we agree with the ultimate outcome. Specifically, the parties' "marriage" ended in November 2013. *See* A.R.S. § 25-325(A). The community property aspect of the marriage "is deemed to have terminated upon the service of a petition

---

[1] Although the family court did not specifically "deny" the fee requests, his failure to rule implies they were denied. *See Pearson v. Pearson*, 190 Ariz. 231, 237 (App. 1997).

that results in a decree of dissolution." *Bobrow v. Bobrow*, 241 Ariz. 592, 596, ¶ 15 (App. 2017) (citing A.R.S. § 25-211(A)(2)). Accordingly, property acquired post-service of process is considered separate property if the parties get divorced. *Brebaugh v. Deane*, 211 Ariz. 95, 97-98, ¶¶ 6-7 (App. 2005); *see also* A.R.S. § 25-213(B). Wife's claim to "all funds contributed" in the 401(k) through November 2013 cannot be harmonized with Arizona law. *Id.*; *see also Cohen,* 215 Ariz. at 67, ¶ 14 (construing the decree's language in the context of the family court's duty to equitably distribute the community property). Although the family court has broad discretion to equitably divide the community property, *Boncoskey,* 216 Ariz. at 451, ¶ 13; *see* A.R.S. § 25-318(A), separate property must be assigned to the proper spouse. *In re Marriage of Flower*, 223 Ariz. 531, 534-35, ¶ 12 (App. 2010) (citing A.R.S. § 25-318(A)).

¶7            To this end, though, Wife contends the decree equitably divides the community's interest in post-service of process contributions to the 401(k) resulting from Husband's pre-service (*i.e.,* community) efforts. But Wife did not claim an interest in post-service of process 401(k) contributions at trial, nor did she suggest any post-service 401(k) contributions were for pre-service work.[2] Instead, she requested that the family court divide the 401(k) based on a balance of $145,037.47 as of December 2012 (three months after service of the petition). In her pretrial statement, Wife alleged (i) the 401(k) was worth $145,037.47, (ii) the community's interest was $115,082.77, and (iii) she was entitled to receive $57,541.39.[3] *See Leathers v. Leathers*, 216 Ariz. 374, 378, ¶ 19 (App. 2007) (explaining that the pretrial statement controls the course of the litigation). She did not offer a 401(k) statement past December 2012. Wife's failure to support her argument by reference to the evidence constitutes a waiver on appeal. *See Sholes v. Fernando,* 228 Ariz. 455, 461, ¶ 16 (App. 2011).

¶8            Wife submits that she asserted an interest in post-service of process contributions in the 401(k) via her testimony regarding a Wells Fargo account. She relies on the following:

---

[2] Wife does not contend the community was entitled to a lien on Husband's separate property. *See* A.R.S. § 25-318(E); *see also Valento v. Valento*, 225 Ariz. 477, 481, ¶¶ 11-12 (App. 2010).

[3] The decree recited: "<u>Marker Advisors 401k</u>. Mother wants $115,082.77 of the $145,037.47 treated as community property and divided 50/50."

Q       Lori, how did [Husband] earn his income?

A       Now?

Q       Did he have commissions previously?

A       Oh yes.

Q       Okay. And so, when he earned money did he get it right the day he earned it?

A       No. He would get paid on the backend. He's a – as a real estate agent, after the house sold. And then he got paid on the back ends of all of his consulting jobs and for flipping houses.

. . .

A       He rebuilt houses for people. And his money came from the end of the projects.

¶9       Wife posits the "uncontested evidence" proved Husband received "back-end payments" from pre-service of process efforts, which "could result in further 401(k) contributions." But the premise underlying Wife's position is not supported by the evidence—as noted by the family court, which cautioned Wife about speculating on Husband's post-service earning deposits:

THE COURT: How do you know that?

THE WITNESS: How would he make so much money in --

THE COURT: Okay, well I'm -- see, your guesses aren't useful to me. If there's something specific you know about where this money come -- came from and how it was generated and what your rights or [Husband]'s rights to this money were, then I can take that into account. But if you're just saying, 'I'm guessing that this money must be something that he made before the divorce petition was filed,['] I – that's not really evidence.

In the end, the family court concluded the community had no interest in Husband's separate bank account deposits.[4] We affirmed this ruling on appeal, explaining that Wife had offered no evidence concerning the community's interest in the account "[a]side from her own speculative testimony." *Krenzen v. Katz,* 1 CA-CV 14-0037, 2015 WL 631453, at *6, ¶ 33 (Ariz. App. Feb. 12, 2015) (mem. decision).

**¶10** To interpret the decree as Wife urges means that the family court either (1) treated Husband's post-service of process earnings as community property, contrary to Arizona law, or (2) characterized Husband's post-service of process earnings as community property, contrary to the evidence. The better interpretation is that the family court intended to award each party half of the funds contributed in the 401(k) until the community terminated. On this basis, we find no error.

### B. Attorney Fees

**¶11** Wife argues that the family court erred by denying her request for attorney fees without considering the parties' financial resources. We review a decision on fees for an abuse of discretion. *Nicaise v. Sundaram,* 1 CA-CV 17-0069 FC, 2018 WL 1101654, at *7, ¶ 32 (Ariz. App. Mar. 1, 2018); *MacMillan v. Schwartz*, 226 Ariz. 584, 592, ¶ 36 (App. 2011).

**¶12** The family court may award reasonable attorney fees "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." A.R.S. § 25-324(A). Although the court may award fees based on either financial disparity or reasonableness, *see Magee v. Magee*, 206 Ariz. 589, 591 n.1, ¶ 8 (App. 2004); *see also Rinegar v. Rinegar*, 231 Ariz. 85, 90, ¶ 23 (App. 2012) (affirming fee award based on financial disparity), it must consider both factors. *Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 9 (App. 2014); *Nicaise,* 2018 WL 1101654, at *8, ¶ 34 ("And because two factors must be considered, a neutral finding on one factor does not necessarily preclude an award."). Although Wife suggests that Husband's "substantial financial superiority should have tipped the balance" in her favor,[5] we remand so the court can

---

[4] The court found only one community bank account containing $2,816, which he awarded to Wife.

[5] Two months earlier, the family court awarded Wife $8,730.50 in attorney fees incurred on a prior appeal based solely on the parties' disparate financial resources. Husband did not appeal this award, nor does

consider the issue in the first instance. *Cf. Paul E. v. Courtney F.*, 1 CA-CV 17-0048 FC, 2018 WL 1602496, at *11, ¶¶ 34-35 (Ariz. App. Apr. 3, 2018) (remanding so the family court could determine whether fee award was justified based solely on financial disparity).

**CONCLUSION**

**¶13**        For the foregoing reasons, we affirm the QDRO. We remand the order denying Wife's request for attorney fees so the family court can consider the parties' financial resources in addition to the reasonableness of the parties' positions. *See* A.R.S. § 25-324(A). We deny the parties' requests for attorney fees on appeal without prejudice. On remand, the family court may decide whether to award fees incurred on appeal. Because each party partially prevailed on appeal, we make no award of taxable costs.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

he contend the parties' financial circumstances have changed since it was entered.